## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| JN GROUP HOLDINGS, INC.; JN GROUP, INC.; and CYCLE CITY, LTD., | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Civ. No. 17-00375 ACK-KJM ) |
| DANIEL RYAN; ELIZABETH RYAN; WILLIAM RYAN; SARAH RYAN; KIRK WONG; STACEY GALIMA; BENJAMIN RENEAU; TAMBI LOWSTAN; CALIBER AUTOMOTIVE LIQUIDATORS, INC.; JANE DOES 1-10; JOHN DOES 1-10; and DOE CORPORATIONS 1-20, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ELIZABETH RYAN AND SARAH RYAN'S MOTIONS FOR JUDGMENT ON THE PLEADINGS

For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Defendants Elizabeth Ryan and Sarah Ryan's Motions for Judgment on the Pleadings, ECF Nos. 71, 72.

### BACKGROUND

On July 31, 2017, Plaintiffs JN Group Holdings, Inc., JN Group, Inc., and Cycle City, Ltd. (collectively, "Plaintiffs") filed a complaint against Defendants Elizabeth Ryan, Sarah Ryan, and seven others. Compl., ECF No. 1 ("Compl."). Plaintiffs allege that another defendant, Dan Ryan, formed a conspiracy and implemented various schemes to defraud Plaintiffs and convert their funds and property for personal

- 1 -

gain.  Id. ¶ 23.  Dan Ryan was hired as the general manager for Cycle City in 2011, and his employment agreement provided for a base salary with various non-discretionary bonuses related to productivity and profitability.  Id. ¶¶ 24-25.  Sarah Ryan, Dan Ryan's daughter, was employed as a cashier at a Cycle City location from September 1, 2011 to January 1, 2013, and as a receptionist at JN Group from November 6, 2012 to April 9, 2014. Id. ¶¶ 11, 103.  Elizabeth Ryan, Dan Ryan's wife, was employed at Cycle City from November 7, 2011 to February 2013 to perform administrative duties.  Id. ¶¶ 9, 85, 103.

Relevant here, Plaintiffs allege that Sarah and Elizabeth Ryan, among others, took vehicles from Plaintiffs without authorization for personal use, concealed their use, and did not compensate Plaintiffs for the value of the use.  Id. ¶ 38.  In addition, Plaintiffs allege that Elizabeth Ryan used a Cycle City company credit card to purchase personal airfare, hotel accommodations, and food, and did not reimburse Cycle City for these expenses.  Id. ¶¶ 86-87.  Plaintiffs also allege that Sarah Ryan received unauthorized spiffs and bonuses approved by the alleged conspiracy.  Id. ¶¶ 89-92.

Elizabeth Ryan was served with the Complaint on August 7, 2017, and filed her answer on September 5, 2017.  ECF Nos. 9, 15.  Sarah Ryan was served with the Complaint on September 26, 2017, and filed her answer on October 17, 2017.  ECF Nos. 26,

54.  On October 20, 2017, Dan Ryan filed a Motion for Special
Civil RICO Discovery under Local Rule 33.1, which was heard on
November 30, 2017 and remains pending before Magistrate Judge
Mansfield.  ECF Nos. 56, 128.  The instant Motions for Judgment
on the Pleadings were filed on October 27, 2017.  ECF No. 71
("S. Ryan Mot."); ECF No. 72 ("E. Ryan Mot.").  Plaintiffs filed
their Oppositions on December 26, 2017.  ECF No. 136 ("S. Ryan
Opp."); ECF No. 137 ("E. Ryan Opp.").  Replies were filed on
January 2, 2018.  ECF No. 139 ("S. Ryan Reply"); ECF No. 140
("E. Ryan Reply").

The Court held a hearing on the Motions on January 16,
2018.

## STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter
the pleadings are closed — but early enough not to delay trial —
a party may move for judgment on the pleadings."  Chavez v.
United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation and
original alteration omitted).  Judgment on the pleadings is
properly granted "when, accepting all factual allegations in the
complaint as true, there is no issue of material fact in
dispute, and the moving party is entitled to judgment as a
matter of law."  Id. (citation and original alteration omitted).

Analysis under Rule 12(c) is substantially identical
to analysis under Rule 12(b)(6) because, under both rules, a

- 3 -

court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy. Id. The Court must therefore assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Harris v. Cty. of Orange, 682 F.3d 1126, 1131 (9th Cir. 2012) (Iqbal applies to Rule 12(c) motions because Rule 12(b)(6) and Rule 12(c) motions are functionally equivalent).

Judgment on the pleadings under Rule 12(c) is limited to material included in the pleadings, unless the Court elects to convert the motion into one for summary judgment. Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health, 654 F.3d 919, 925 n.6 (9th Cir. 2011). Rule 12(d) gives the Court "discretion to accept and consider extrinsic materials offered in connection with these motions, and to convert the motion to one for summary judgment when a party has notice that the district court may look beyond the pleadings." Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1207 (9th Cir. 2007).

The Court must accept as true the facts as pled by the non-movant, and will construe the pleadings in the light most favorable to the nonmoving party. U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1053 (9th Cir. 2011);

- 4 -

<u>Doyle v. Raley's Inc.</u>, 158 F.3d 1012, 1014 (9th Cir. 1998).

Additionally, mere conclusory statements in a complaint or

"formulaic recitation[s] of the elements of a cause of action"

are not sufficient.  <u>Twombly</u>, 550 U.S. at 555.  Thus, the Court

discounts conclusory statements, which are not entitled to a

presumption of truth, before determining whether a claim is

plausible.  <u>Iqbal</u>, 556 U.S. at 678.

> "[D]ismissal with prejudice and without leave to amend
is not appropriate unless it is clear on de novo review that the
complaint could not be saved by amendment."  <u>Harris</u>, 682 F.3d at
1131 (citation omitted).  Courts "have discretion to grant a
Rule 12(c) motion with leave to amend, or to dismiss the action
instead of entering judgment."  <u>Isom v. Wagatsuma</u>, Civ. No. 16-
00532 JMS-KJM, 2017 WL 4158203, at *3 (D. Haw. Sept. 18, 2017).

## DISCUSSION

> Elizabeth and Sarah Ryan assert that they are only the
subject of Count V for conversion, and that the allegations fail
to state a claim against them for that count.  <u>See generally</u> E.
Ryan Mot.; S. Ryan Mot.  Plaintiffs concede that Count VI for
breach of fiduciary duty does not apply to Elizabeth or Sarah
Ryan.  E. Ryan Opp. at 16; S. Ryan Opp. at 16.  However,
Plaintiffs argue that each of the other counts has been
sufficiently alleged against Elizabeth and Sarah Ryan.  <u>See</u>
<u>generally</u> E. Ryan Opp.; S. Ryan Opp.

In order to sufficiently plead a cause of action against a defendant, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." See Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). The complaint should contain "clear and concise averments stating which defendants are liable to plaintiffs for which wrongs" in order to plainly state a claim. McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996); see also In re Sagent Tech., Inc. Derivative Litig., 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act."). In addition, for allegations of fraud, as here, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together;" rather, plaintiffs must "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (internal quotation and citation omitted).

Factual allegations incorporated by reference can provide a defendant fair notice of a cause of action. See Adobe Lumber, Inc. v. Hellman, No. CIV 05-1510 WBS PAN, 2008 WL 4539136, at *4 (E.D. Cal. Oct. 2, 2008) (denying motion to dismiss where factual allegations, including those incorporated

by reference, provided fair notice of the claim against the movant). However, courts have noted that using a "shotgun pleading," for example by reciting a collection of general allegations toward the beginning of the complaint and incorporating them by reference into each count, "deprives Defendants of knowing exactly what they are accused of doing wrong" and warrants dismissal. Sollberger v. Wachovia Secs., LLC, No. SACV 09-0766 AG, 2010 WL 2674456, at *4-5 (C.D. Cal. June 30, 2010).

In addition, courts have found that where defendants are only mentioned by name in certain counts and not others, the defendants do not have fair notice regarding the counts in which they are not named. See, e.g., Lara v. Aurora Loan Servs. LLC, No. 12CV904-GPC BLM, 2013 WL 1628955, at *7 (S.D. Cal. Apr. 16, 2013) (defendants only mentioned by name in a single claim made it impossible to determine whether the plaintiff intended to include them in the other claims and did not provide fair notice); Greenwood v. Mepamsa, SA, No. CV-11-08040-SMM, 2011 WL 2493658, at *2 (D. Ariz. June 23, 2011) (finding defendants did not have fair notice of counts in which they were not mentioned by name); Madrueno v. Homecomings Fin. Co., LLC, No. CV-09-1413-PHX-DGC, 2010 WL 1654150, at *3 (D. Ariz. Apr. 21, 2010) (finding defendants did not have fair notice where complaint mentioned some defendants individually in certain claims while

- 7 -

others were not so mentioned and it was not clear which claims applied to which defendants).

The Court is inclined to agree with Plaintiffs that the omission of Elizabeth and Sarah Ryan's names in certain counts is not sufficient to find as a matter of law that they are not subject to those counts. <u>See</u> S. Ryan Opp. at 5-6; E. Ryan Opp. at 4-6. However, the Court must still inquire into whether the Complaint gives them fair notice of each cause of action, and if so, whether the factual allegations sufficiently state a claim against them.

## I.   Plaintiffs' Causes of Action

The Court will first address Counts I, II, III, and VII, which claims Elizabeth and Sarah Ryan assert are not against them. The Court will then address Count V for conversion, which Elizabeth and Sarah Ryan do not dispute they are subject to. The Court will address Count IV last, since civil conspiracy in Hawaii requires an underlying actionable claim and will thus depend in part on whether any of the other claims have been sufficiently stated, even if fair notice of the claim has been provided.

### A. Counts I-II: Civil RICO and Civil RICO Conspiracy

In Counts I and II, Plaintiffs specifically allege that "[t]his Count is against Defendants Dan Ryan, William Ryan, Wong, Galima, Lowstan, Reneau, and Caliber." Compl. ¶¶ 101,

116.  Elizabeth and Sarah Ryan argue that these allegations constitute a judicial admission that Counts I and II do not apply to them.  E. Ryan Reply at 3-4; S. Ryan Reply at 3-4. "Allegations in a complaint are considered judicial admissions." Hakopian v. Mukasey, 551 F.3d 843, 846 (9th Cir. 2008). "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."  Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) (citation and quotation omitted).  Such admissions are "conclusively binding on the party who made them" in the trial court, unless amended.  Id.

Plaintiffs' allegations listing certain defendants subject to Counts I and II constitute a binding judicial admission that those defendants are subject to those counts. However, the allegations do not state that the counts are *only* against the listed defendants to the exclusion of others. Construing the pleadings in the light most favorable to Plaintiffs as the non-moving party, the Court cannot agree that these allegations constitute a formal judicial admission that Elizabeth and Sarah Ryan are not subject to those counts.

Nevertheless, the Court must still address whether Elizabeth and Sarah Ryan have fair notice of these causes of action, and the fact that they are not mentioned in the

allegations listing defendants is certainly relevant. Turning
first to Count I, there are allegations describing how each of
the listed defendants allegedly participated in the RICO
enterprise. See id. ¶ 106. No participation by either
Elizabeth or Sarah Ryan is specifically described. In addition,
there are paragraphs specific to the listed defendants regarding
their engagement in a pattern of racketeering and damage to
Plaintiffs as a result of their conduct. Id. ¶¶ 107, 112.

   At the same time, Plaintiffs mention Elizabeth and
Sarah by name in two allegations, claiming that Dan Ryan formed
a team of co-conspirators which included them, and that they
participated in the enterprise through a pattern of racketeering
activity. See Compl. ¶¶ 103, 113. In addition, the count
contains more general allegations that the individual defendants
constitute an "enterprise," that "Dan Ryan and his team of co-
conspirators" participated in the enterprise, that "[e]ach
Defendant" agreed that at least two racketeering acts would be
committed in furtherance of the conspiracy, and that
"Defendants" generally devised schemes to defraud and
participated in making false and misleading statements. Id. ¶¶
105-06, 108-111. The count also incorporates prior allegations
by reference. Id. ¶ 100.

   Regardless, whether or not these more general
allegations could be construed together to include Elizabeth and

Sarah Ryan, in the context of the count as a whole they render uncertain, at best, any notice to Elizabeth and Sarah Ryan that they might otherwise have provided. As in <u>Madrueno</u>, cited above, the style of Plaintiffs' pleading, making general allegations as well as naming certain individual and groups of defendants in certain claims but not others, renders it difficult to discern which causes of action apply to which defendants. Finding that fair notice has been provided here would require Elizabeth and Sarah Ryan to assume that they still were subject to this count despite the omission of their names from the allegations listing defendants. The general allegations included in this count do not provide a sufficient basis for them to conclude with any confidence that they should make that assumption. The Court therefore concludes that fair notice of Count I has not been provided and accordingly it does not state a claim against Elizabeth or Sarah Ryan.[1]

---

[1] Since Elizabeth and Sarah Ryan are not subject to Count I as currently alleged, the Court need not address the parties' other arguments. Regardless, the Ninth Circuit has indicated while simply providing services to the enterprise does not constitute participation, being in the chain of command and knowingly implementing decisions of upper management are relevant considerations. <u>See</u> <u>Walter v. Drayson</u>, 538 F.3d 1244, 1249 (9th Cir. 2008). Certain allegations here appear to suggest that Elizabeth and Sarah Ryan did more than provide services to the enterprise. <u>See, e.g.</u>, Compl. ¶¶ 52, 91 (alleging Dan and Sarah Ryan conspired to pay her bonuses and Dan Ryan directed the distribution of unauthorized bonuses). However, Plaintiffs would be better served by plain and direct allegations in Count (Continued...)

Turning to Count II, the Court notes that Elizabeth and Sarah Ryan are not mentioned by name. Though there are allegations relating to "[t]he Dan Ryan enterprise," Compl. ¶ 119, the more general references to defendants are to "*these* defendants" – i.e., those specifically identified in the count. See, e.g., id. ¶¶ 120-122 (emphasis added). Even more so than for Count I, the Court cannot find that Elizabeth and Sarah Ryan have fair notice that they are subject to this count. See also Cox v. McDaniel, No. 3:05CV00421-HDM(RAM), 2007 WL 601493, at *2 (D. Nev. Jan. 29, 2007), report and recommendation adopted as modified, No. 3:05CV00421-HDM-RAM, 2007 WL 601487 (D. Nev. Feb. 16, 2007) (finding plaintiff failed to state a claim against certain defendants not named in counts in which many other defendants were named). Accordingly, the Court concludes that

---

I setting forth how Elizabeth and Sarah Ryan allegedly participated and what racketeering acts they committed, if any. It is not apparent how Elizabeth or Sarah Ryan were involved in mail or wire fraud, based on the supporting allegations Plaintiffs identified, and the Court questions whether Elizabeth or Sarah Ryan's alleged conduct concerned vehicles involved in interstate commerce. See E. Ryan Opp. at 8-11 (identifying portions of complaint supporting predicate racketeering acts); S. Ryan Opp. at 8-11 (same). Though the resolution of Dan Ryan's motion for special RICO discovery may clarify some of these issues in any event, Local Rule 33.1 relates to discovery, not pleadings. As such, Plaintiffs would do well to ensure that the Complaint itself sufficiently states a RICO claim against each defendant they claim is liable.

Count II fails to state a claim against them.[2]

**B. Count III: Fraud**

Although Count III does not contain an allegation specifically listing the defendants subject to the claim, Elizabeth and Sarah Ryan are also not mentioned by name. Rather Plaintiffs allege that Dan Ryan and four other specifically identified defendants "during their employment with Plaintiffs, have engaged in a consistent course of conduct through which they have fraudulently misled Plaintiffs." Compl. ¶ 127. Plaintiffs then specify the affirmative material misrepresentations, omissions, and concealed information that "[t]hese defendants" made. Id. ¶ 128. While Plaintiffs occasionally make certain allegations as to these defendants and "their co-conspirators," id. ¶¶ 129-30, 133-34, 136, the Court does not find that the sporadic inclusion of "co-conspirators" suffices to give Elizabeth and Sarah Ryan fair notice of this claim. The substance of the allegations in Count III focuses the statements and omissions of the five defendants identified by name.

---

[2] The Court also notes that a defendant may still be liable for RICO conspiracy even if she is not liable for the RICO acts themselves. See Salinas v. United States, 522 U.S. 52, 63-64 (1997). Here, however, Plaintiffs have only alleged Elizabeth and Sarah Ryan's agreement to participate in a conspiracy in a conclusory fashion, as discussed below with respect to Count IV for civil conspiracy, which is an additional reason why Count II does not state a claim.

It is also not apparent that either Elizabeth or Sarah
Ryan was involved in making those statements or omissions.
Rather, they allegedly were involved in the unauthorized use of
credit cards and rental cars and unauthorized receipt of bonuses
and spiffs.  Compl. ¶¶ 38, 86-92.  Count III focuses on payments
for employee housing, bonuses and personal expenses for Dan
Ryan, company financial records, the VehSmart device,
authorization of checks issued, Dan Ryan's ownership interest in
Caliber, and marketing materials and services.  Id. ¶¶ 128, 133-
35.  Based on the categories of fraudulent statements and
omissions identified in the complaint, compared with the conduct
in which they allegedly engaged, the Court does not find a fair
basis for Elizabeth or Sarah Ryan to conclude that their alleged
conduct renders them subject to this count.

In addition, even assuming that Elizabeth and Sarah
Ryan had fair notice that they were subject to this count, it
still fails to state a claim against them.  In general, "[t]o
satisfy Rule 9(b), a pleading must identify the who, what, when,
where, and how of the misconduct charged, as well as what is
false or misleading about the purportedly fraudulent statement,
and why it is false."  Cafasso, 637 F.3d at 1054-55 (internal
citation, quotation, and alteration omitted).  Although
Plaintiffs are not required to identify every false statement by
each defendant, the allegations must inform each defendant of

his or her participation in the fraudulent scheme.  See Swartz, 476 F.3d at 764-65.  With respect to Elizabeth and Sarah Ryan, the allegations in Count III do not comply with this requirement.  The allegations regarding the co-conspirators are conclusory and do not sufficiently inform them as to their specific participation in the alleged fraud.  Nor do the allegations incorporated by reference bridge this gap.  As noted above, the specific allegations against Elizabeth and Sarah Ryan are unrelated to the fraud alleged in Count III.

Moreover, even if the claim was stated with sufficient particularity, the allegations still fail to state a claim against both Elizabeth and Sarah Ryan.  A claim for fraud requires that the misrepresentations be made to induce another to act.  E. Ryan Opp. at 11 (citing Hawaii ex rel. Louie v. Haw. Gov't Emps. Ass'n, AFSCME Local No. 152, 133 Haw. 385, 407 n.33, 328 P.3d 394, 416 (Haw. 2014) for elements of fraud); S. Ryan Opp. at 11 (same).  There do not appear to be any allegations in Count III, either specifically as to Elizabeth or Sarah Ryan, or generally against "co-conspirators," regarding the element of inducement.  Rather, those allegations are only made as to Dan Ryan and the other four named defendants.  Compl. ¶¶ 132, 138. As such, the Court concludes that Count III does not state a claim against Elizabeth or Sarah Ryan.

## C. Count VII: Tortious Interference with Business Relations

As with the foregoing counts, Elizabeth and Sarah Ryan are not mentioned by name in Count VII. The allegations also do not reference co-conspirators or defendants generally. Rather, the allegations are limited to Dan Ryan and three other listed defendants, who are referred to collectively only once as "these Defendants." See Compl. ¶¶ 169-174. While the count incorporates prior allegations, none of the allegations regarding either Sarah or Elizabeth Ryan relate to the Kawasaki and Harley Davidson contracts at issue in Count VII, or the unauthorized transfers and shipments of motorcycles which allegedly interfered with those contracts. See id. The Court finds that these allegations plainly do not provide fair notice and thus fail to state a claim against Elizabeth and Sarah Ryan.

## D. Count V: Conversion

Elizabeth and Sarah Ryan do not contest that they are subject to Count V. Indeed, Plaintiffs explicitly include their names in the allegations setting forth the wrongful conduct in this count. See Compl. ¶¶ 150-156. Rather, Elizabeth and Sarah Ryan argue that the factual allegations against them do not state a claim for conversion. See E. Ryan Mot. at 11-15; S. Ryan Mot. at 12-15. Hawaii defines conversion as "[a]ny distinct act of dominion wrongfully exerted over one's property in denial of his right or inconsistent with it." Tsuru v.

<u>Bayer</u>, 25 Haw. 693, 696 (Haw. Terr. 1920) (internal citation and quotation omitted). The elements of a conversion claim are: "'(1) [a] taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand.'" <u>Pourny v. Maui Police Dep't</u>, 127 F. Supp. 2d 1129, 1146 (D. Haw. 2000) (Kay, J.) (quoting <u>Tsuru</u>, 24 Haw. at 696).

Elizabeth and Sarah Ryan assert that in Hawaii conversion is considered an intentional tort requiring a constructive or actual intent to injure and that Plaintiffs' allegations here are conclusory. <u>See</u> E. Ryan Mot. at 12, 14; S. Ryan Mot. at 12, 15. Plaintiffs argue that allegations that property was taken without permission resulting in an unreimbursed financial loss sufficiently state a claim for conversion. E. Ryan Opp. at 14-15; S. Ryan Opp. at 13-14. Though Plaintiffs do not directly contest whether intent to injure is required, implicit in their position is an assertion that if Elizabeth and Sarah Ryan's intentional conduct towards the property was in fact unauthorized, a claim has been stated and intent to injure is not necessary. <u>See</u> <u>id.</u> Plaintiffs' allegations regarding intent to injure appear somewhat conclusory. <u>See</u> Compl. ¶¶ 154-55 (Defendants have "knowingly taken unauthorized possession" of Plaintiffs' property and conversion "was done intentionally and without justification and

excuse, to Plaintiffs' injury"). As such, the Court will turn to whether plausibly pleading actual or constructive intent to injure is necessary to state a claim for conversion.

As Elizabeth and Sarah Ryan note, the Hawaii Supreme Court has stated in one case that conversion requires showing "a constructive or actual intent to injure." Brooks v. Dana Nance & Co., 113 Haw. 406, 415, 153 P.3d 1091, 1100 (Haw. 2007). However, in multiple cases the Intermediate Court of Appeals has subsequently held, without mentioning Brooks, that "the defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant to a conversion claim" so long as she intended "to deal with the property in a way which is in fact inconsistent with the property rights of another." See, e.g., Yoneji v. Yoneji, 136 Haw. 11, 16-17, 354 P.3d 1160, 1165-66 (Haw. Ct. App. 2015) (internal citation and quotation omitted). Indeed, in Freddy Nobriga Enterprises, the Intermediate Court of Appeals found irrelevant the defendant's mistaken belief that its actions were lawful and concluded that the trial court erred in granting summary judgment to the defendant where the facts showed that the defendant sold the plaintiff's property without consent. Freddy Nobriga Enters., Inc. v. Haw., Dep't of Haw. Home Lands, 129 Haw. at 129-30, 295 P.3d at 999-1000. Courts in this district have split on which line of cases to follow. Compare, e.g., Newcomb v. Cambridge Home Loans, Inc., 861 F.

Supp. 2d 1153, 1164 (D. Haw. 2012) (citing Brooks) with, e.g., Sunday's Child, LLC v. AZREP BW LLC, Civ. No. 13-00502 DKW-RLP, 2017 WL 561338 at *5 (D. Haw. Feb. 10, 2017) (citing Yoneji).

Yoneji and Freddy Nobriga Enterprises are in accord with secondary sources on this issue. The Restatement (Second) of Torts notes that "[t]he intention required is an intention merely to exercise a dominion or control over the chattel which in fact seriously interferes with the right of another to control it." Restatement (Second) of Torts § 224(c) (1965). A defendant may be liable for conversion "when he dispossesses another of a chattel in the entirely reasonable belief that it is his own, or where he innocently buys stolen goods." Id. American Jurisprudence 2d states even more plainly that "a defendant's intent is irrelevant in a tort action for conversion." 18 Am. Jur. 2d Conversion § 3 (2017). A defendant can be held liable for conversion even when acting in good faith, without knowledge of the true owner's rights, or in the mistaken belief that his conduct is legal. Id.

This Court does not read the Hawaii Supreme Court's decision in Brooks as setting forth a definitive pronouncement that intent to injure is required in conversion cases. In support of its statement on conversion, the Brooks court merely cited to a Hawaii case from 1904 "approving a jury instruction that 'conversion is the exercise of dominion over an article

- 19 -

with intent to repudiate the ownership of the true owner and in defiance of his rights.'" 113 Haw. at 415, 153 P.3d at 1100 (quoting Pac. Mill Co. v. Enter. Mill Co., 16 Haw. 282, 284, 286 (Haw. Terr. 1904)).  However, in discussing the evidence, the court in Pacific Mill did not focus on intent to injure, but rather on whether there had been an intentional act which was in fact inconsistent with the owner's rights.  Indeed, it stated that a defendant "cannot be held to have appropriated [property] unless by some act inconsistent with the plaintiff's exercise of ownership."  Pac. Mill Co., 16 Haw. at 286.  This standard is the same as set forth in Yoneji and Freddy Nobriga Enterprises and is not mentioned in Brooks.

Moreover, in Brooks, the court was only evaluating the reasonability of a settlement amount based on the apparent record at the time, not making an actual determination on the merits of the claim.  113 Haw. at 415, 153 P.3d at 1100.  The court simply provided a cursory statement of the law in order to estimate the strength of the conversion claim.  See id.  Under such circumstances, the court's statement can hardly be read as a considered and precise articulation of the law on conversion, much less a drastic departure from well-settled principles.  In light of the foregoing, and especially given that the passing statement on intent to injure in Brooks is not actually supported by Pacific Mill, the Court does not consider it bound

by <u>Brooks</u> in this regard.[3]

Instead, the Court concludes that <u>Yoneji</u> and <u>Freddy Nobriga Enterprises</u>, which are in accord with <u>Pacific Mill</u>, accurately state the law on conversion.  The Court therefore finds that in Hawaii conversion can occur even if a defendant is acting in good faith or without knowledge of the true owner's rights as long as there is an intentional action towards the property which is in fact inconsistent with the plaintiff's property rights.  Here, Elizabeth and Sarah Ryan allegedly used Plaintiffs' rental cars and company credit card and retained unauthorized bonuses.  The allegations show those actions were done intentionally and that they interfered in fact with Plaintiffs' property rights.  Thus, contrary to Elizabeth and Sarah Ryan's position, a plausible allegation that they intended to injure Plaintiffs is not necessary to state a conversion claim.  Even if they had been acting in good faith, they may still be liable for conversion.  The Court therefore does not

_____

[3] Moreover, even if the statement in <u>Brooks</u> purported to offer an authoritative pronouncement of law, this Court is not bound to follow the Hawaii Supreme Court if there are "convincing reasons to believe it would no longer adhere to its earlier rationale." <u>See</u> <u>Kremen v. Cohen</u>, 325 F.3d 1035, 1047 (9th Cir. 2003).  The Hawaii Supreme Court's earlier opinion in <u>Pacific Mill</u>, numerous state and federal court opinions in Hawaii using the same standard, and secondary sources which have plainly stated that intent to injure is not relevant constitute convincing reasons to believe the Hawaii Supreme Court would not adhere to the perfunctory statement it made in <u>Brooks</u> in any event.

find the allegations supporting the conversion claim deficient with respect to intent.

Next, Elizabeth and Sarah Ryan argue that the fourth element, demand, has only been alleged in a conclusory fashion, with no allegations as to when or how it was made or how much was demanded. E. Ryan Mot. at 14; S. Ryan Mot. at 14. The Court agrees. Plaintiffs merely allege that the individual defendants "wrongfully detained the funds, property, and value of the property after demand for the return of the same." Compl. ¶ 154. However, this does no more than repeat the element of demand, and as such is not entitled to the presumption of truth. See Starr, 652 F.3d at 1216.

However, Hawaii has instructed that "where the taking itself is wrongful or there is an illegal assumption of ownership or an illegal user a demand and a refusal need not be proved." Tsuru, 25 Haw. at 696 (citing Ah Hoy v. Raymond, 19 Haw. 568, 573 (Haw. Terr. 1909)). "So long as [the defendant] intends to deal with the property in a way which is in fact inconsistent with the plaintiff's right, [the defendant] is a converter." Freddy Nobriga Enters., 129 Haw. at 130, 295 P.3d at 1000 (internal quotation and citation omitted). Thus, as long as Elizabeth and Sarah Ryan's initial taking was wrongful, the Complaint will still state a claim for conversion despite

the insufficiency of the demand allegations.[4]  The Court will
address in turn each of the three categories of property which
Elizabeth and/or Sarah Ryan allegedly converted.  <u>See</u> E. Ryan
Opp. at 13; S. Ryan Opp. at 13.

     Plaintiffs first allege that both Elizabeth and Sarah
Ryan used Plaintiffs' rental cars without authorization and also
did not compensate Plaintiffs for that use.  <u>Id.</u> ¶¶ 38, 89-90.
In claiming that the use was unauthorized, Plaintiffs have
sufficiently alleged that the initial taking of the rental cars
was wrongful and inconsistent with their property rights.  As
such, demand is not necessary, and the Court finds that a claim
for conversion of the rental cars has been sufficiently stated.

     Second, Plaintiffs allege that Elizabeth Ryan made
various unauthorized purchases on a company credit card for
which they were not reimbursed.  <u>Id.</u> ¶¶ 86-87.  This is
essentially a claim for conversion of money.  Courts in this
district have predicted that Hawaii would not allow a claim for
conversion of intangible property.  <u>J&J Sports Prods., Inc. v.
Alcantara</u>, Civ. No. 13-00220 LEK-RLP, 2014 WL 1669070, at *4-5

---

[4] Contrary to their assertion, E. Ryan Reply at 10, S. Ryan Reply
at 10, Elizabeth and Sarah Ryan are only entitled to additional
factual allegations regarding the demand if demand is necessary
to state the claim.  If Plaintiffs do not need to prove demand,
then allegations regarding demand are irrelevant and do not need
to be plausibly stated.  The Court declines to address the
suggestion that sanctions may be appropriate.

(D. Haw. Apr. 25, 2014).  However, a claim for conversion may be stated as to funds which are specific and identifiable.  See Sunday's Child, 2017 WL 561338, at *5 (finding conversion claim sufficiently stated as to deposits allegedly wrongfully retained); see also Casados v. Drury, Civ. No. 13-00283 LEK-RLP, 2014 WL 2968221, at *9-10 (D. Haw. June 30, 2014) (collecting cases from other jurisdictions).  In Yoneji, the Intermediate Court of Appeals vacated a grant of summary judgment for a trustee regarding conversion of trust funds because her conduct was inconsistent with the plaintiffs' ownership interest in the trust funds and thus she could be found liable for conversion. 136 Haw. at 16-17, 354 P.3d at 1165-66.

     At the pleading stage, the plaintiff is only required to allege conversion of "an amount that is capable of identification."  Natomas Gardens Inv. Grp., LLC v. Sinadinos, 710 F. Supp. 2d 1008, 1020 (E.D. Cal. 2010) (interpreting California law).  In addition, California courts have held that a claim for conversion may be stated for unauthorized use of a credit card because it constitutes a wrongful transfer to the defendant of the plaintiff's property rights, i.e. the money from an available credit line belonging to the plaintiff.  See Welco Elecs., Inc. v. Mora, 223 Cal. App. 4th 202, 211-215, 166 Cal. Rptr. 3d 877, 884-87 (Cal. Ct. App. 2014).  The money Elizabeth Ryan allegedly converted here – personal airfare,

hotel, and food – constitutes a specific amount capable of identification. The Court is also persuaded that Elizabeth Ryan's alleged unauthorized use of a company credit card is wrongful and inconsistent with Plaintiffs' property rights and thus sufficiently states a claim for conversion.

Finally, Plaintiffs allege that Sarah Ryan received unauthorized spiffs and bonuses. Compl. ¶¶ 91-92. As discussed above, a claim for money may be stated as to funds which are specific and identifiable. See Sunday's Child, 2017 WL 561338, at *5. Courts have found insufficient allegations regarding conversion of "monies." See Davis v. Standefor, No. CV-08-8056 PSG, 2009 WL 10672600, at *4 (C.D. Cal. July 6, 2009). However, a scheme to steal bonuses related to the sale of specific automobiles has been found to allege amounts capable of identification and state a claim for conversion. See Brock v. Concord Auto. Dealership LLC, No. 14-CV-01889-HSG, 2015 WL 3466543, at *6 (N.D. Cal. June 1, 2015).

Here, the allegations rise above a claim for conversion of money generally. Rather, Plaintiffs have specifically alleged that there are certain spiffs and bonuses Sarah Ryan received which were unauthorized. Compl. ¶¶ 91-92. The amounts allegedly converted in these unauthorized spiffs and bonuses are capable of identification. Plaintiffs have alleged why the spiffs and bonuses were improperly given, such as for

non-work related activity or for no reason at all.  Id. ¶ 52.
In addition, Plaintiffs have alleged that many of the bonuses
were not reflected in the payroll.  Id. ¶ 53.  Together, these
factual allegations provide a sufficient basis to allow
identification of the unauthorized spiffs and bonuses Sarah Ryan
allegedly received.  While additional detail might be helpful,
the Court nevertheless concludes that Plaintiffs have met their
burden in pleading conversion of the spiffs and bonuses Sarah
Ryan retained.

Based on the foregoing, the Court finds that the
Complaint sufficiently alleges that the use of Plaintiff's
credit cards, rental cars, and funds was wrongful at the outset,
and therefore demand was not necessary.  As such, Plaintiffs
have sufficiently stated claims for conversion against Elizabeth
and Sarah Ryan as discussed above.

### E. Count IV: Civil Conspiracy

The Court first addresses whether Elizabeth and Sarah
Ryan have fair notice of Count IV.  As with several counts
discussed above, the allegations in Count IV do not specifically
mention them by name, though they incorporate all preceding
allegations.  See id. ¶¶ 140-148.  The allegations only
reference Dan Ryan and two other specifically identified
conspirators, but they also generally include "other
conspirators" and "other Dan Ryan team members."  Id. ¶¶ 142-43,

145-46.  Although Plaintiffs could have alleged more clearly who

the "other conspirators" and "other Dan Ryan team members" were,

reading the Complaint as whole in the light most favorable to

Plaintiffs, it is clear Plaintiffs intended to include all of

named defendants, including Sarah and Elizabeth Ryan.  See,

e.g., id. ¶ 19 ("At all times pertinent to the allegations of

this Complaint, Defendants Elizabeth Ryan, Sarah Ryan, William

Ryan, Wong, Galima, Lowstan, Reneau, Caliber, and DOE

Defendants, were acting in concert with, or under the direction

and control of Dan Ryan.").  The "conspirators" and "team

members" are mentioned in almost every paragraph of this count,

and Plaintiffs also seek to hold "[e]ach Defendant" jointly and

severally liable for the torts committed in furtherance of the

conspiracy.  Id. ¶ 147.  The Court thus concludes that while

this claim could have been pleaded more clearly, Elizabeth and

Sarah Ryan had fair notice that they were subject to it.

The Court next turns to the sufficiency of the

allegations.  "Under Hawaii law, the accepted definition of a

conspiracy is a combination of two or more persons or entities

by concerted action to accomplish a criminal or unlawful

purpose, or to accomplish some purpose not in itself criminal or

unlawful by criminal or unlawful means."  Menashe v. Bank of New

York, 850 F. Supp. 2d 1120, 1138 (D. Haw. 2012) (internal

citation, quotation, and alteration omitted).  However, because

Hawaii does not recognize a civil claim based on conspiracy alone, "a plaintiff must allege an underlying actionable claim." Id. (citing Weinberg v. Mauch, 78 Haw. 40, 49, 890 P.2d 277, 286 (Haw. 1995) and Ellis v. Crockett, 51 Haw. 45, 57-58, 451 P.2d 814, 822-23 (Haw. 1969)). As discussed above, Plaintiffs have stated a claim for conversion, and the Court therefore proceeds to consider whether the conspiracy claim has also been stated.

A plaintiff must provide factual allegations establishing the plausibility of a conspiracy claim; he may not merely recite the elements. See id. In Menashe, the court found insufficient allegations that defendants unlawfully conspired to originate mortgage loans through predatory lending practices and "engaged in conduct against the [p]laintiff as set out herein," which gave rise to various other causes of action, in order to accomplish the purposes of the conspiracy. Id. Nor is simply describing the alleged agreement sufficient. The court in Long v. Deutsche Bank National Trust Co. rejected allegations that the defendants entered into an agreement to accomplish an unlawful purpose in connection with a loan transaction, including "making the false representations set forth" in a separate fraud claim. No. CIV. 10-00359 JMS/KS, 2011 WL 2650219, at *7-8 (D. Haw. July 5, 2011). The court found that these "wholly conclusory" allegations failed to explain any actions that indicated the defendants formed a civil

conspiracy regarding the alleged fraud.  <u>Id.</u>  And in <u>Velasco v.</u>
<u>Security National Mortgage Co.</u>, the court found insufficient
allegations that the defendants agreed to perform at least one
of several enumerated acts and engaged in those acts in
furtherance of the agreement, noting that no specific facts had
been offered to support that the defendants entered into the
alleged agreement.  823 F. Supp. 2d 1061, 1070 (D. Haw. 2011),
<u>aff'd,</u> 508 F. App'x 679 (9th Cir. 2013).

Here, Plaintiffs allege that "Dan Ryan, Galima, and
Wong and/or other conspirators agreed to carry out Dan Ryan's
scheme" to benefit themselves.  Compl. ¶ 142.  This is plainly
conclusory.  Nor do other allegations incorporated by reference
provide any additional factual detail making Elizabeth or Sarah
Ryan's agreement plausible.  Plaintiffs allege that Elizabeth
and Sarah Ryan, among others, "were acting in concert with, or
under the direction and control of Dan Ryan" and that Dan Ryan
formed this conspiracy by replacing existing employees with his
friends and family, including Elizabeth and Sarah Ryan, and by
promising bonuses to other existing employees.  Compl. ¶¶ 19,
103.  Plaintiffs also allege that "Dan and Sarah Ryan conspired
in a scheme to pay unauthorized spiffs and bonuses to Sarah Ryan
during her employment with Plaintiffs."  <u>Id.</u> ¶ 91.  Finally,
Plaintiffs generally allege that the acts described in the
Complaint, presumably including Elizabeth and Sarah Ryan's

alleged acts of conversion, are "examples of some of the actions taken by Defendants to further their schemes." See id. ¶¶ 23, 38, 85-92.

These additional allegations do not provide any specific facts supporting that either Elizabeth or Sarah Ryan entered into the agreement described or intended to further the conspiracy through their alleged conversion. Nor do the alleged acts of conversion provide a basis for inferring that Elizabeth or Sarah Ryan entered into the conspiracy or furthered it through their alleged conduct, especially since conversion can be committed unwittingly. Rather, as in Menashe, Long, and Velasco, the allegations here that Elizabeth and/or Sarah Ryan entered into an agreement and engaged in conversion in order to further the conspiracy do no more than impermissibly recite the elements of this claim. The Court therefore concludes Plaintiffs have failed to state a claim against Elizabeth and Sarah Ryan for civil conspiracy.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Elizabeth and Sarah Ryan's Motions for Judgment on the Pleadings. The Court finds that Count V sufficiently states a claim against them for conversion, and the Motions are DENIED as to this count. However, Counts I-IV and

VII fail to state claims against Elizabeth and Sarah Ryan, and the Motions are GRANTED as to those counts. The Court does not find that amendment would be futile and as such exercises its discretion to dismiss with leave to amend, rather than entering judgment. Counts I-IV and VII are therefore DISMISSED WITHOUT PREJUDICE. Plaintiffs are granted LEAVE to file an amended complaint within 30 days of the date of Magistrate Judge Mansfield's decision on Defendant Daniel Ryan's Motion for Special Civil RICO Discovery under Local Rule 33.1.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 19, 2018.



Alan C. Kay
Sr. United States District Judge

JN Group Holdings, Inc., et al. v. Daniel Ryan, et al., Civ. No. 17-00375 ACK-KJM, Order Granting in Part and Denying in Part Defendants Elizabeth Ryan and Sarah Ryan's Motions for Judgment on the Pleadings.